## 8310

### WELBORN v. COBB.

1. PARTIES—PLEADINGS—FORECLOSURE.—THE GUARANTOR of a note secured by a mortgage may be sued with the defaulting mortgagor in the action of foreclosure without alleging that the mortgaged lands are not worth and will not bring enough to pay the debt or that assignee is in danger of any loss.

2. PLEADINGS—CAUSE OF ACTION.—An allegation in such complaint that mortgagor claims damages for failure of consideration in deficiency of acreage on misrepresentation by mortgagee is not made for the purpose of setting up a claim between the defendants, but to show the liability of the guarantor, and is not a misjoinder of causes of action.

   *Latimer* v. *Wharton,* 41 S. C. 508, *explained.*

3. ISSUES.—Where a defendant, mortgagor, sets up as a defense to a suit in foreclosure for the purchase money a deficiency in acreage, the defense partakes of the nature of the cause of action and is triable in equity.

4. MORTGAGES—ASSIGNEES.—The stipulations in a note and mortgage are carried by their assignment to the assignee and he may take advantage of the rights and privileges thereof.

5. FORECLOSURE—JUDGMENT—GUARANTOR.—In this action it was not error for the Court to give plaintiff judgment in foreclosure against mortgagor for the amount due on the mortgage debt less the value of a gross deficiency of acreage and judgment against guarantor for balance of note, as guarantor was a party to the cause, had the right to attend the references, and to be heard in Court.

6. GUARANTY.—From the evidence here it is found that the guaranty of the note was not a temporary arrangement to last until assignee's attorney's could examine the title of mortgagor, but that it was made after the agreement to assign the notes *"without recourse."*

7. FRAUD.—MISREPRESENTATION in law and in morals may be made by purposely creating a false impression or belief in the mind of another with the intention that he act on it without making any positive or literal false statement of fact.

Before ERNEST GARY, J., October, 1910, and GAGE, J., March, 1911, Anderson.   Affirmed.

Action by E. H. Welborn against W. W. Cobb and J. W. Dickson.   Dickson appeals.

*Messrs. Bonham, Watkins & Allen* and *Leon L. Rice,* for appellant.   *Mr. Rice* cites: *As to abatement:* 69 S. C. 263; 4 McC. 434; 35 S. C. 404; 6 Rich. 37; 2 Speer 61; 23 S. C. 208.

*Mr. Bonham* cites: *Issue of failure of consideration should have been tried by jury:* 17 S. C. 32; 44 S. C. 120; 80 S. C. 263; 89 S. C. 393; Harp. 290; 70 S. C. 283.

*Messrs. Martin & Earle,* contra, cite: *Reduction for material misrepresentation or mistake by seller:* 2 Rich. 130; 2 Hill 657; 20 Ency. 876; Rice Ch. 55; Harp. 290; 4 McC. 434; Rice Ch. 57; Wiltsie Forc. Mtgs., secs. 364-5.

September 13, 1912.   The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.   On August 24, 1908, the defendant Dickson conveyed to the defendant Cobb a tract

of land, described in the deed as containing 138 acres, more or less. The purchase price was $4,800, $1,000 of which was paid, and, for the balance, Cobb gave Dickson seven notes for $500 each, and one for $300, due at intervals of one year, with interest from date, and secured them by a mortgage of the land. The mortgage contained a stipulation that if either of the notes was not paid at maturity, the whole debt should become due.

On January 6, 1909, Dickson executed an assignment of these notes and mortgage, with others, to the plaintiff, in which he stipulated: "the notes to be endorsed without recourse on me." But an instrument of writing, signed by Dickson, under seal, and bearing date January 11, 1908, appears in the record, of which the following is a copy: "In view of the fact that the papers I am this day turning over to E. H. Welborn, as part payment for land deal made by and between the said E. H. Welborn and myself, have not as yet been examined by Welborn's attorney, I, J. W. Dickson, do hereby guarantee the papers, held by me and given by W. W. Cobb and J. P. Fortune, to be good and valid, and I hereby obligate myself to protect the said E. H. Welborn against any losses or otherwise pertaining to the above said papers of W. W. Cobb and J. P. Fortune."

In May, 1910, Welborn commenced this action against Cobb and Dickson for foreclosure. In addition to the facts above stated, the complaint alleged that the note which first became due was not paid at maturity, and that, under the stipulation of the mortgage above mentioned, the whole debt thereupon became due; that, by consent of plaintiff, Cobb had sold part of the land, and paid the proceeds on the mortgage debt, under agreement with plaintiff that such payment, though it exceeded the amount then due on the notes, according to their terms, should not affect his right to foreclose, which had already accrued, under the stipulation contained in the mortgage. Plaintiff alleged further that he was informed and believed that the defendant Cobb

claimed the right to set off against the mortgage debt the
sum of $845, with interest thereon from August 24, 1908,
because of a deficiency in the acreage of the tract conveyed
to him by Dickson, on the ground that Dickson had falsely
represented to him that it contained 138 acres, when it con-
tained only 113, and, to the extent of the shortage, the con-
sideration of the notes and mortgage had failed.

Dickson demurred to the complaint on numerous grounds
which need not be repeated, as they will be considered in
what we shall say.    One of the grounds chiefly relied upon
is that the complaint states no cause of action
against him, and, therefore, he is improperly made
a defendant.    He contends that the complaint is
fatally defective in its allegations as to him, because it is
not alleged that the land still owned by Cobb is not worth
and will not bring enough to pay the balance due plaintiff,
or that plaintiff is in danger of any loss on the notes and
mortgages.    As Dickson guaranteed the notes and mort-
gage and obligated himself to protect Welborn from loss
on them, and as his principal had defaulted, we do not see
upon what ground it can be contended that Welborn could
not maintain this action against both Cobb and Dickson,
without making the allegations suggested.    Plaintiff was
under no obligation, by the terms of his contract, to exhaust
his remedies against Cobb before resorting to Dickson, but
had the right to proceed against both at the same time and
in the same action.    Section 188 of the Code expressly
covers the objection made by defendant.    It provides: "If
the mortgage debt be secured by the covenant or obligation
of any person other than the mortgagor, the plaintiff may
make such person a party to the action, and the Court may
adjudge payment of the residue of such debt remaining
unsatisfied after a sale of the mortgaged premises against
such other person, and may enforce such judgment as in
other cases."    See also, Pom. Rem., sec. 334; Wiltsie Mtge.
Foreclosure, sec. 77, 109; 27 Cyc. 1565.

The next contention pressed under the demurrer is that several causes of action were improperly united in the complaint. This contention seems to be based upon the idea that the plaintiff sets up, in his complaint, a cause of action in favor of Cobb against Dickson for the deficiency in the acreage of the land, a cause of action with which, as Dickson contends, plaintiff has no concern, and he complains further that, if Cobb should be compelled to bring said cause of action against him in a separate action, he would be entitled to trial by jury, which has been denied to him by reason of his having been joined as a defendant, and compelled to litigate the issue between Cobb and himself in this action. Appellant has evidently failed to analyze and clearly comprehend the complaint. It states only one cause of action. True, the plaintiff does therein anticipate the defense which he was informed Cobb would make, by alleging the facts out of which it arose. While these facts were not strictly necessary to plaintiff's cause of action because, as we have seen, the allegation that Dickson guaranteed the notes and mortgage was sufficient to make him a proper party defendant, still they were not entirely irrelevant, because they showed that, if Cobb established his defense, the validity of the notes and mortgage would be impaired, and that Dickson should thereupon be required to make good his guarantee. It appears, therefore, that plaintiff did not allege these facts, as appellant assumes, for the purpose of stating a cause of action which Cobb had against Dickson, and which he could maintain through the plaintiff, and in this action, or not at all. In this connection, it may not be out of place to say that the decision of this Court in the case of *Latimer* v. *Wharton*, 41 S. C. 508, 19 S. E. 792, seems to have been misunderstood, at least to some extent, in the Court below. That case does hold that in so far as the equity of a purchaser of land to be relieved from payment of the purchase money, or any part thereof, depends upon *a mere failure of considera-*

*tion,* such equity can be set up only as a defense to an action for the purchase money. But that case does not hold, and we think no case can be found in our reports which does hold, that a failure of consideration which results from a breach of warranty, express or implied, or from fraud, accident, mistake or misrepresentation, intentional or unintentional, cannot be asserted actively as a cause of action and afford ground for relief. Therefore, in so far as Cobb's equity depended upon a *mere failure of consideration,* he could be relieved in this action, or not at all; but, in so far as it depended upon Dickson's misrepresentation, it was available to him, either as a separate cause of action against Dickson, or as a defense in this action. But appellant seems to overlook the fact that the same facts which constitute a cause of action may also constitute a defense. The facts here referred to are stated as a defense. Therefore there was no improper joinder or causes of action in the complaint.

As to the right of a trial by jury: Where a defendant sets up, as a defense to an equitable cause of action, facts which grow out of that cause of action, or the transaction which gave rise to it and are so interwoven with it as to be inseparable from it, the defense partakes of the nature of the cause of action and is equitable, and not triable by jury, as of right. In *McLaurin* v. *Hodge,* 43 S. C. 187, 20 S. E. 991, the action was to foreclose a mortgage. The defense was usury; and a counterclaim to recover double the usurious interest which had been paid was set up. Now, unquestionably, if the facts constituting that counterclaim had been set up in a separate action by the defendant against the plaintiff, the action would have been legal and triable by jury. But when set up as a defense to the plaintiff's equitable cause of action for foreclosure, this Court held that, as it grew out of that cause of action, or the transaction which gave rise to it, and was inseparable from it, and as its determination would directly

affect the amount recoverable on the equitable cause of action, it was an equitable defense and triable by the Court. In *Hunt* v. *Nolen,* 46 S. C. 553, 24 S. E. 553, the Court said: "This action for foreclosure is on the *equity* side of the Court, and the defense is that there was a partial failure of consideration, *arising out of the transaction in which the mortgage was given.* The issues are therefore all *equitable* in their nature." To the same effect is *Pratt* v. *Timmerman,* 69 S. C. 187, 48 S. E. 255, and numerous other cases might be cited. Besides, there are numerous instances in which equity administers legal rights which arise incidentally or collaterally in causes of which it has taken jurisdiction. *Hughes* v. *Kirkpatrick,* 37 S. C. 161, 15 S. E. 912; *Jenkins* v. *Jenkins,* 83 S. C. 544, 65 S. E. 736; *Ex parte Wilson,* 84 S. C. 447, 66 S. E. 675.

The contention that it appeared from the complaint that the action could not be maintained, because the debt was not due, is so clearly untenable as to require little discussion. The allegation that the whole debt became due according to the stipulation in the mortgage, by the failure to pay the first note at maturity, was admitted by the demurrer. The plaintiff also alleged that he did not waive, and did not intend to waive, his right to foreclose, which had accrued under that stipulation, by subsequently accepting more than was due on the notes, at the date of the payment, and that Cobb agreed that his acceptance thereof should not be so construed, and that allegation was admitted by the demurrer. But Dickson contends that he was not a party to that agreement and was not bound by it. A sufficient answer to that contention is that the stipulation in the mortgage was for the benefit of the mortgagee, or his assignee, and when he assigned the mortgage to Welborn, the assignment carried with it all rights and privileges under the stipulation, and thereafter Welborn alone could enforce or waive his rights under that stipulation.

The case was tried on the merits before his Honor, Judge Gage, who submitted to a jury certain issues which had been prepared by plaintiff's attorneys, and of the proposed submission of which due notice had been served upon defendant's attorneys. In addition to those proposed by plaintiff's attorneys, his Honor, of his own motion, submitted two others. Appellant imputes error to the Court in submitting those issues of which no notice had been given him, on the ground that he had had no hearing as to them. Other reasons might be given for overruling this assignment of error, but it is enough to say that the record fails to disclose any objection made by appellant, at the time, to the submission of the additional issues, or that he asked to be heard as to their submission, and that a hearing was refused him.

The findings of the jury, which were concurred in by the Court, established the following facts: That Dickson misrepresented the acreage of the land to Cobb, but without intent to defraud him (so far as the evidence shows, it does not appear that Dickson knew that the tract did not contain 138 acres. His deed and several prior deeds in his chain of title described it as containing 138 acres, more or less) ; that the tract was sold as a whole and not by the acre; that the deficiency amounted to 24½ acres, and that it was a gross deficiency. Thereupon, the Court, finding that the deficiency amounted, in value, to $972.20, and that there was then due on the notes and mortgage $1,041.55, abated the amount due by the amount of the deficiency and gave the plaintiff judgment against Cobb for the balance, $69.35, with the right to foreclose, and gave him judgment against Dickson for the amount of the deficiency.

There is no merit in appellant's contention that the Court erred in giving such judgment, because part of the relief prayed for in the complaint was that the case be referred to a referee to ascertain and report the amount due on the mortgage, and that he expected,

therefore, that it would be referred, and at such reference he would have the opportunity to examine the witnesses as to the payments made. When the case was taken up for trial in open Court, he should have known that it would be finally disposed of on that trial, or he should, at least, have informed himself as to that matter. But the record fails to show that he made any objection in the Court below to a final judgment being passed, or that he asked for an opportunity to offer any further evidence, or for a reference. He had full opportunity to examine both plaintiff and Cobb as to payments made on the mortgage debt.

It is contended that the Court erred in disregarding the endorsement of the notes "without recourse," and in holding Dickson bound by the agreement, dated January 11, 1908, to guarantee payment and save Welborn from loss on the notes and mortgage. Appellant argues that the agreement dated January 11th, did not bear its true date, and that it is inferable from the evidence that its true date was January 1st, and that it was intended to be only a temporary guarantee of the title to the land covered by the Cobb mortgage, pending the examination of that title by Welborn's attorneys, and that when the transaction was subsequently closed, that agreement expired, because, at that time, Welborn's attorneys had examined and approved the title. An examination of the agreement does not warrant the inference of any such limitation of its purpose, or that it was intended to be only temporary, and of force only until the title could be examined. The findings and conclusions of the Court are supported by the greater weight of the evidence.

The appellant requested the Court to charge the jury that, if he merely said to Cobb that his deed called for 138 acres, that would not be a misrepresentation. His Honor refused the instruction, on the ground that it would be a charge on the facts. In this there was no error, because a seller might say to a buyer, "my deed calls

for so much" in such a way and under such circumstances as to create in the mind of the buyer the belief that the tract contained that many acres.   If he should make such an assertion with the intention to create such a belief, knowing that the tract did not contain that many acres he would be guilty of misrepresentation.   One may be guilty of misrepresentation in law, as well as in morals, by purposely creating a false impression of belief in the mind of another, with the intention that he act upon it, without making any positive or literal false statement of fact.   The suppression of the truth, with misleading suggestions, may be as effective to create an erroneous or false impression as a direct falsehood.

The other points raised are either involved in and concluded by what has been said, or they are so clearly untenable as to require no special consideration.

Affirmed.

*Only* MR. CHIEF JUSTICE GARY *and* MR. JUSTICE WOODS *participated in hearing this case and concur.*